1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9

10  TREMAINE GREGORY MILES,

11                          Petitioner,

12          v.

13  STEPHEN SINCLAIR.

14                          Respondent.

15

CASE NO. C12-5412 RBL-JRC

REPORT AND RECOMMENDATION

NOTED FOR:

NOVEMBER 9, 2012

16      The District Court has referred this petition for a writ of habeas corpus to United States

17  Magistrate Judge J. Richard Creatura. The District Court's authority for the referral is 28 U.S.C.

18  § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR3 and MJR4.

19      Petitioner seeks relief from a state conviction and sentence under the State of Washington

20  Persistent Offender statute. Petitioner filed the petition pursuant to 28 U.S.C. § 2254. Petitioner

21  raises nine grounds for relief (ECF No. 6). Respondent has answered the petition and shown that

22  five of the nine grounds for relief are procedurally barred (ECF No. 13). The Court recommends

23  that the petition be denied because none of the four remaining grounds for relief have merit.

24

REPORT AND RECOMMENDATION - 1

1    Petitioner's sentencing was done within constitutional standards and petitioner was not

2    inadequately represented by counsel.  While the sentence petitioner received in this case – life

3    imprisonment, without possibility of parole – may be harsh, it does not violate clearly established

4    federal or constitutional law

5    BASIS FOR CUSTODY

6          Petitioner was convicted in November of 2007 by a Pierce County jury of first degree

7    robbery and attempting to elude a pursuing police vehicle (ECF No. 14, Exhibit 1). Petitioner

8    was sentenced as a persistent offender to life without the possibility of parole.

9    FACTS

10         The Washington State Court of Appeals summarized the facts in Miles' case as follows:

11    On November 24, 2007, Marshalls's department store loss prevention personnel,
Amparo Medina-Perez and Vincent San Nicolas, were watching a surveillance

12    video of a specific area of the store where several "Phat Farm" brand jackets had
recently been stolen. Report of Proceedings (RP) (Jan. 23, 2008) at 162. The

13    jackets, which were priced between $200 and $300, were secured to a metal
display rack by wire cable.

14

15    While watching live surveillance video in the loss prevention office, Medina-
Perez observed a man, who was later identified as Miles, walk into the store and
then to the Phat Farm jackets. Medina-Perez and San Nicolas saw a wire cable fall

16    to the ground near the jackets. They watched as Miles removed a jacket from the
rack. He then left the area with the jacket in hand.

17

18    San Nicolas watched as Miles walked to another section of the store, knelt down,
and then put a drawstring bag on his back. The jacket was no longer visible and

19    the bag appeared to be full. Darrell Butorac, the operations manager for
Marshalls, saw Miles walking through the store wearing the bag. Miles walked
around the customer service area to exit the store. Butorac did not see Miles

20    purchase anything.

21    Miles began to leave the store and was followed by four Marshalls's employees--
the two loss prevention staff, the store manager, and Butorac. Inside the store

22    vestibule, Medina-Perez identified herself to Miles and said, "'Marshalls loss
prevention. We just need to go inside and talk about the ... unpaid-for

23    merchandise.'" RP (Jan. 23, 2008) at 184. Miles replied: "'Step back, little girl.
You're going to get stepped on.'" RP (Jan. 23, 2008) at 184. He then pushed

24

1    Medina-Perez on the shoulder, and went out the exterior doors onto the sidewalk.
     In describing the contact, Medina-Perez testified that "he pushed me with
2    some quite bit of force [sic], which threw me back." RP (Jan. 23, 2008) at 184.

3    Medina-Perez followed Miles, trying to convince him to come back into the store.
     At that point, Miles told her to "'[s]tep back.'" RP (Jan. 23, 2008) at 186. He then
4    pulled out what appeared to be a knife and pointed it at her. Butorac heard
     someone yell "'[i]t's a knife,'" and everyone backed off. RP (Jan. 23, 2008) at
5    153. Miles got into a red pickup truck and drove through the parking lot before
     getting stuck behind other cars at the mall exit.

6
     The store manager contacted Officer Kenneth Devaney of the Lakewood Police
7    Department. Officer Devaney located a red pickup truck stopped at a stop sign. A
     highspeed chase ensued. During the pursuit, Miles drove 50 to 60 m.p.h. in a
8    residential 25 m.p.h. zone, crossed into the oncoming lane of traffic, and failed to
     stop at stop signs and a red light. The chase ended on foot.

9
     Ultimately, Miles was handcuffed and searched. Officer Devaney found a folding
10   knife with a three and one-quarter inch blade in Miles's right front pants' pocket
     and a pair of wire cutters. In Miles's truck, Officer Devaney found a bag on the
11   front passenger seat containing a gray fur "Baby Phat" brand jacket. RP (Jan. 23,
     2008) at 121. The jacket had a Marshalls's price tag and security tag. Two store
12   employees arrived on the scene and identified Miles. After returning to Marshalls,
     Officer Devaney obtained the surveillance video of the incident from San Nicolas.
13   The surveillance video was later played for the jury.

14   The State charged Tremaine Gregory Miles with one count of first degree robbery
     with a deadly weapon enhancement, one count of attempting to elude a pursuing
15   police vehicle, and one count of obstructing a law enforcement officer.

16   On January 3, 2008, the State filed a persistent offender notice. At a January 17
     pretrial hearing, the State informed the trial court that Miles had an extensive
17   criminal history, extending from 1980 through 2007. The prosecutor explained
     that a 1984 conviction for first degree robbery in Pierce County was "clearly a
18   strike offense." RP (Jan. 17, 2008) at 13. The State was also trying to obtain
     records from Nassau County, New York, on a 1980 conviction for second degree
19   attempted robbery, which was potentially a second strike. The prosecutor
     informed the court that he had submitted multiple requests for documents to New
20   York, with no response.

21   On January 29, the jury found Miles guilty of all three counts as charged. The jury
     also returned a special verdict, finding that Miles was armed with a deadly
22   weapon at the time he committed the robbery. The court set sentencing for
     February 29.

23

24

REPORT AND RECOMMENDATION - 3

1   At the February 29 hearing, the State advised the court of the continuing problems getting the necessary paperwork from Nassau County, despite having put in 8 to

2   10 requests and talking with supervisors in the Nassau County records division. The State also explained that there was some question as to whether the 1984

3   robbery could be counted as a conviction because it might have been overturned on appeal. The State then argued for a continuance, as follows:

4

5   Unfortunately, for the court to sentence him, the court will have to have a good solid offender score. In this case, I believe Mr. Miles'

6   offender score might be as little as a seven; could be as high as a nine; could be even higher than a nine and, frankly, he could be a

7   persistent offender. And I think, in fairness to all the parties, the State would be asking for a set-over of Mr. Miles' sentencing.

8   RP (Feb. 29, 2008) at 4.

9   The trial court then asked if there was any issue with speedy sentencing. The State conceded that continuing sentencing to the next available court date of March 14

10   would potentially go beyond the 40-day time limit in the speedy sentencing statute. But the State asserted that Miles would not be prejudiced. The prosecutor

11   later argued that the delay could work in Miles's favor, pointing out that if the 1984 Pierce County conviction had been reversed, it would not count toward his

12   offender score or count as a strike offense.

13   Defense counsel acknowledged the State's effort to resolve the sentencing issues before the hearing, stating: "Your Honor, I happen to know that [the prosecutor]

14   was diligently ferreting out Mr. Miles' offender score weeks prior to trial. So, through no fault of his own, we come here today for sentencing and Mr. Miles'

15   true offender score is somewhat cloudy." RP (Feb. 29, 2008) at 6. Nonetheless, defense counsel stipulated to an offender score of eight and asked to proceed to

16   sentencing. He argued that if additional information was received, it could mean a longer sentence for Miles.

17

18   The trial court granted the State's request and continued sentencing until March 14, allowing the State time to figure out the true offender score and whether Miles

19   qualified as a persistent offender. The court concluded that there was no prejudice to Miles "because regardless of whether his offender score is a seven, a nine-plus,

20   or I am sentencing under the persistent offender statute, ... he's going to remain incarcerated at least through the 14th of March." RP (Feb. 29, 2008) at 8.

21   On March 14, the court found Miles to be a persistent offender, based on a 1984 Pierce County conviction for third degree rape and the 1984 Pierce County

22   conviction for first degree robbery. The court accepted the State's sentencing recommendation and sentenced Miles to life without the possibility of parole on

23   count I, the first degree robbery conviction. The court also imposed a 24-month deadly weapon enhancement on that count. Miles was sentenced to 29 months on

24

REPORT AND RECOMMENDATION - 4

count II and 365 days' confinement on count III. Finally, the court ordered the term of confinement was to be followed by 18 to 36 months of community custody. Miles timely filed a notice of appeal.

(ECF No. 14, Exhibit 3, pages 2-7).

<u>PROCEDURAL HISTORY</u>

Petitioner argued on direct appeal that:

1. His right to speedy sentencing had been violated,

2. Defense counsel was ineffective in not informing him of the sentence he might face if he did not accept the plea bargain,

3. There was insufficient evidence to convict him of robbery,

4. There was insufficient evidence to support the weapons enhancement,

5. His rights were violated by the court's failure to give a lesser included offense instruction,

6. He was entitled to an evidentiary hearing to determine prior offenses,

7. Two of his prior felony convictions should have "washed out" and not been included in his offender score,

8. The Persistent Offender Accountability Act violates the Eighth Amendment,

9. The jury pool contained only one African-American person, and

10. The Persistent Offender Accountability Act violates the Ex Post Facto Clause.

(ECF No. 14, Exhibit 4 (Speedy trial claim), Exhibit 5 (pro se statement of additional grounds raising all other claims)).

The Washington State Court of Appeals affirmed the conviction and sentence (ECF No. 14, Exhibit 3). The Washington State Court of Appeals specifically held that the record before it did not contain the evidence needed for the court to address petitioner's argument regarding the racial composition of the jury. (ECF No. 14, Exhibit 3, page 21).

Petitioner filed a motion for discretionary review and raised three grounds for relief. He argued that his right to speedy sentencing had been violated, that his rights were violated by the court's failure to give a lesser included offense instruction, and that he was entitled to an evidentiary hearing to determine prior offenses (ECF No. 14, Exhibit 8). The Washington State Supreme Court denied review without comment (ECF No. 14, Exhibit 9).

Petitioner filed a personal restraint petition in the Washington State Court of Appeals (ECF No. 14, Exhibits 11 and 12). Petitioner argued:

1. The elements of being a persistent offender had to be found by the jury and failure to have a jury decide the issue violated petitioner's rights under the Fourteenth Amendment equal protection clause and the Sixth Amendment right to a jury.

2. The lack of African-American jurors violated petitioner's Constitutional rights.

3. Counsel was ineffective in failing to object to the class "C" felony, as a strike conviction.

The Washington State Court of Appeals denied the petition (ECF No. 14, Exhibit 14). The Washington State Court of Appeals erroneously stated that the trial court used a third degree robbery conviction as a class "C" felony that was counted as the second strike at sentencing (ECF No. 14, Exhibit 14, page 1). Actually, the trial court used a third degree rape conviction as the second strike at sentencing (ECF No. 14, Exhibit 1). The Washington State Court of Appeals did not consider petitioner's argument regarding the racial composition of the jury, not only because it had been raised on direct appeal, but because petitioner had again failed to provide the record to support his claim (ECF No. 14, Exhibit 14, page 2). The Washington State Court of Appeals, relying on *Blakely v. Washington*, rejected the argument that a jury had to find that prior convictions counted as strike offenses (ECF No. 14, Exhibit 14, page 1). *Blakely v. Washington*, 542 U.S. 296 (2004).

1     Petitioner filed a motion for discretionary review with the Washington State Supreme

2   Court and argued:

3       1. The elements of being a persistent offender had to be found by the jury and
           failure to have a jury decide the issue violated petitioner's rights under the
4          fourteenth amendment equal protection clause, and the sixth amendment right
           to a jury clause.

5

6       2. The lack of black jurors violated petitioner's constitutional rights.

7       3. Counsel was ineffective in failing to object to the class "C" felony, as a strike
           conviction.

8   (ECF No. 14, Exhibit 15).  The Washington State Supreme Court denied review and issued the

9   last reasoned opinion (ECF No. 14, Exhibit 16A).

10    Petitioner filed a second personal restraint petition (ECF No. 14, Exhibit 17). The

11  Washington State Supreme Court dismissed petitioner's second personal restraint petition as

12  time barred (ECF No. l4, Exhibit 17 and 20). Because the state court did not consider the second

13  personal restraint petition on the merits, the second petition did not exhaust any ground for relief

14  and the specific grounds for relief raised in that petition are not relevant.

15    Respondent has accurately summarized the nine grounds for relief that petitioner raised in

16  his federal habeas corpus petition.

17      1. The trial court violated Miles' constitutional right to speedy sentencing by
           granting the state's motion to continue sentencing, which unquestionably
18         delayed his sentencing and the delay was purposeful and oppressive.

19      2. Insufficient evidence of first degree robbery. Force is an element in the
           offense of robbery. There was insufficient evidence of force because the theft
20         was already completed when Miles had left the store. He did not take the coat
           by force or threat. He left under duress in a state of panic.

21

22      3. Ineffective assistance of counsel at sentencing. Trial counsel failed to
           thoroughly investigate Miles' criminal history to find out what crimes the
           State was going to use to qualify as strikes for purposes of having Miles
23         sentenced to life without parole under the state's persistent offender statute.

24

REPORT AND RECOMMENDATION - 7

Trial counsel failed to object to the State's use of a class C felony as a third strike.

4. Racial discrimination tainted the jury pool. During jury selection, there was only one black woman in the whole jury pool.

5. Miles' prior convictions should be treated as elements of his crime such that the State should have been required to prove their existence to a jury beyond a reasonable doubt, because they increased his maximum punishment.

6. Miles was deprived of his right to a jury trial and proof beyond a reasonable doubt because the trial court imposed a sentence over the maximum term based upon the existence of prior convictions that were not found by the jury beyond a reasonable doubt.

7. The 1984 conviction for third degree rape is invalid because Miles did not knowingly and voluntarily agree to the plea bargain. The plea form incorrectly advised Miles of the elements of third degree rape.

8. Miles' guilty plea regarding the 1984 conviction was invalid because he was not informed about the direct consequences of a guilty plea. There was a mutual mistake about the maximum punishment.

9. The court erred in denying Miles a lesser-included offense jury instruction of second degree robbery for the first degree robbery charge.

(ECF No. 13, page 5-6). Respondent concedes that grounds for relief one, three, five, and six are exhausted. Respondent argues that grounds for relief two, seven, eight, and nine are procedurally barred, and that ground for relief four is procedurally barred by a state appellate rule because it was not adequately briefed in state court (ECF No. 13, pages 6-7).

<u>EVIDENTIARY HEARING NOT REQUIRED</u>

Evidentiary hearings are not usually necessary in a habeas case. According to 28 U.S.C. §2254(e)(2) (1996), a hearing will only occur if a habeas applicant has failed to develop the factual basis for a claim in state court, and the applicant shows that: (A) the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or if there is (2) a factual predicate that could not have

1   been previously discovered through the exercise of due diligence; and (B) the facts underlying

2   the claim would be sufficient to establish by clear and convincing evidence that but for

3   constitutional error, no reasonable fact finder would have found the applicant guilty of the

4   underlying offense.  28 U.S.C. §2254(e)(2) (1996).

5        Petitioner's claims rely on established rules of constitutional law. Further, there are no

6   factual issues that could not have been previously discovered by due diligence. Finally, the facts

7   underlying petitioner's claims are insufficient to establish that no rational fact finder would have

8   found him guilty of the crime. Therefore, this Court concludes that an evidentiary hearing is not

9   necessary to decide this case.

10   STANDARD OF REVIEW

11        Federal courts may intervene in the state judicial process only to correct wrongs of a

12   constitutional dimension. *Engle v. Isaac*, 456 U.S. 107 (1983). Section 2254 explicitly states that

13   a federal court may entertain an application for writ of habeas corpus "only on the ground that

14   [petitioner] is in custody in violation of the constitution or law or treaties of the United States."

15   28 U.S.C. § 2254(a) (1995). The Supreme Court has stated many times that federal habeas

16   corpus relief does not lie for mere errors of state law. *Estelle v. McGuire*, 502 U.S. 62 (1991);

17   *Lewis v. Jeffers*, 497 U.S. 764 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984);

18        A habeas corpus petition shall not be granted with respect to any claim adjudicated on the

19   merits in the state courts unless the adjudication either: (1) resulted in a decision that was

20   contrary to, or involved an unreasonable application of, clearly established federal law, as

21   determined by the Supreme Court; or (2) resulted in a decision that was based on an

22   unreasonable determination of the facts in light of the evidence presented to the state courts. 28

23   U.S.C. §2254(d). Further, a determination of a factual issue by a state court shall be presumed

24

correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

DISCUSSION

A.      Procedural Bar.

Five of petitioner's claims are procedurally barred for three different reasons. First, claims two, seven and eight are barred because petitioner failed to raise these grounds for relief at all levels of state review.  Second, claim nine is barred because he failed to raise this claim as a federal claim.  Third, claim four is barred because the state applied an independent and adequate state rule that precludes review.

A.      Overview and exceptions to procedural bar.

As a threshold issue, the Court must determine whether or not petitioner has properly presented the federal habeas claims to the state courts. 28 U.S.C. § 2254(b)(1) states, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted unless it appears that:
(A)      the applicant has exhausted the remedies available in the courts of the state; or
(B)      (i)  there is an absence of available state corrective process; or
(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

In order for a procedural bar to apply, petitioner must be precluded from returning to state court to cure the defect in his pleadings. Here, the state court dismissed petitioner's second personal restraint petition as time barred (ECF No. 14, Exhibit 20). Petitioner cannot return to state court and cannot cure any procedural defects in his pleadings.

1    B.    Discussion regarding grounds for relief two, seven and eight – Failure to present

2 claims in state court proceedings..

3    To exhaust state remedies, petitioner's claims must have been fairly presented to the

4 state's highest court.  *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Middleton v. Cupp*, 768 F.2d

5 1083, 1086 (9th Cir. 1985) (petitioner "fairly presented" the claim to the state Supreme Court

6 even though the state court did not reach the argument on the merits).

7    A federal habeas petitioner must provide the state courts with a fair opportunity to correct

8 alleged violations of federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (*citing Picard*,

9 404 U.S. at 275). Petitioner must have exhausted the claim at every level of appeal in the state

10 courts. *Ortberg v. Moody*, 961 F.2d 135, 138 (9th Cir. 1992). It is not enough that all the facts

11 necessary to support the federal claim were before the state courts or that a somewhat similar

12 state law claim was made.  *Duncan*, 513 U.S. at 365-66 (*citing Picard*, 404 U.S. at 275 *and*

13 *Anderson v. Harless*, 459 U.S. 4 (1982)). Petitioner must present the claims to the state's highest

14 court, even if such review is discretionary. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999);

15 *Larche v. Simons*, 53 F.3d 1068, 1071 (9th Cir. 1995).

16    Petitioner raised his second ground for relief on direct appeal (ECF No. 14, Exhibit 5).

17 Petitioner argued the evidence was insufficient to convict him of first degree robbery. *Id*.

18 Petitioner abandoned this ground for relief when he filed his motion for discretionary review

19 with the Washington State Supreme Court (ECF No. 14, Exhibit 9). Petitioner did not raise this

20 ground for relief in his first personal restraint petition. Therefore, his second ground for relief

21 was not properly exhausted and it is now procedurally barred.

22    Petitioner's seventh ground for relief is that his third degree rape conviction from 1984 is

23 invalid because it was not knowingly and voluntarily made. Petitioner did not raise this ground

24

1   for relief at any level in state court (ECF No. 14, Exhibits 4, 5, 9, 11, 12 and 15).The Court

2   concludes that this ground for relief was not properly exhausted and is now procedurally barred.

3        Petitioner's eighth ground for relief is that his 1984 third degree rape conviction is invalid

4   because he was not informed of the direct consequences of pleading guilty. Petitioner did not

5   raise this ground for relief at any level in state court (ECF No. 14, Exhibits 4, 5, 9, 11, 12 and

6   15). The Court concludes that this ground for relief was not properly exhausted and is now

7   procedurally barred.

8        C.     Discussion regarding ground for relief nine – Failure to present claim in state

9   court as a federal claim.

10       Petitioner's ninth ground for relief is that the trial court erred in denying his request for a

11   jury instruction on a lesser included offense, second degree robbery. Petitioner raised this ground

12   for relief in his direct appeal and in his first motion for discretionary review (ECF No. 14,

13   Exhibits 5 and 8). However, petitioner failed to inform the state courts that the alleged error was

14   not only a violation of state law, but also a violation of the constitution. *Duncan v. Henry*, 513

15   U.S. 364, 365-66 (1995) (ECF No.14, Exhibit 5 and 8). Petitioner also characterizes this claim as

16   a violation of Washington state law, and not in terms of a constitutional violation (see ECF No.

17   6, pages 43 – 46).

18       Petitioner must present the claims to the state's highest court based upon the same federal

19   legal theory and factual basis as the claims are subsequently asserted in the habeas petition.

20   *Hudson v. Rushen*, 686 F.2d 826, 830 (9th Cir. 1982), *cert denied* 461 U.S. 916 (1983); *Shiers v.*

21   *California*, 333 F.2d 173, 176 (9th Cir. 1964) (petitioner failed to exhaust the claim that the state

22   trial court improperly admitted evidence because petitioner never presented such a claim to the

23   state court). Specifically, petitioner must appraise the state court that an alleged error is not only

24

1    a violation of state law, but a violation of the Constitution. *Duncan v. Henry*, 513 U.S. 364, 365-

2    66 (1995).  Vague references to broad constitutional principles such as due process, equal

3    protection, or a fair trial are not enough. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Gatlin v.*

4    *Madding*, 189 F.3d 882, 888 (9th Cir. 1999), *cert. denied*, 528 U.S. 1087 (2000) (petitioner's

5    statement that the state court's cumulative errors denied him a fair trial was insufficient to

6    specifically articulate a violation of a federal constitutional guarantee); *Hiivala v. Wood*, 195

7    F.3d 1098, 1106 (9th Cir. 1999).  Petitioner must include reference to a specific federal

8    constitutional guarantee, as well as a statement of facts that entitled petitioner to relief. *Gray v.*

9    *Netherland*, 518 U.S. at 162-163.

10            It is not enough that all the facts necessary to support the federal claim were before the

11   state courts or that a somewhat similar state law claim was made. *Duncan*, 513 U.S. at 365-66

12   (*citing Picard*, 404 U.S. at 275 *and Anderson v. Harless*, 459 U.S. 4 (1982)).

13            When the Washington State Court of Appeals addressed petitioner's argument it did not

14   address it as an alleged violation of the Constitution (ECF No. 14, Exhibit 3, pages 16 -17).

15   Furthermore, petitioner has never specified how the alleged failure to instruct on lesser included

16   offenses violates any constitutional right.  Petitioner's failure to address this issue as a

17   constitutional violation, either in state court or in this court, is determinative  The ground for

18   relief was not properly exhausted and is now procedurally barred.

19            D.      Discussion regarding ground for relief number four --, independent and adequate

20   state procedural bar.

21            Petitioner's ground for relief number four, which addresses the racial make-up of the

22   jury, is subject to a different analysis because the procedural bar rests on an independent and

23   adequate state procedural rule.

24

1    If the state courts would find petitioner's federal claim barred pursuant to an independent

2  and adequate state rule, federal review of that claim is barred unless petitioner can demonstrate

3  cause for the default and prejudice as a result of the alleged violation of federal law, or that

4  failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman v.*

5  *Thompson*, 501 U.S. 722, 750 (1991); *see also Robinson v. Schriro*, 595 F.3d 1086, 1100 & n.10

6  (9th Cir. 2010); *Cook v. Schriro*, 538 F.3d 1000, 1025 (9th Cir. 2008); *Franklin v. Johnson*, 290

7  F.3d 1223, 1230-31 (9th Cir. 2002).

8    The Washington State Court of Appeals refused to consider ground for relief number four

9  because petitioner provided no record or evidence to review (ECF No. 14, Exhibit 3, page 21).

10  The Washington State Court of Appeals instructed petitioner to file a personal restraint petition if

11  he wished the court to consider matters outside the record (ECF No. 14, Exhibit 3, page 21).

12    Petitioner raised the ground for relief in his first personal restraint petition, but again

13  provided no evidence or record for review. The Washington State Court of Appeals erroneously

14  held that it would not consider the ground for relief because it had been raised on direct appeal,

15  but, the Washington State Court of Appeals also noted that petitioner had not properly briefed

16  the claim (ECF No. 14, Exhibit 14).

17    The Washington State Supreme Court issued the last reasoned opinion on this ground for

18  relief (ECF No. 14, Exhibit 16A) The Washington Supreme Court held that while the

19  Washington Court of Appeals had erred in holding that the ground for relief had been raised on

20  direct appeal, the Washington Court of Appeals was correct in not considering the ground for

21  relief because petitioner had still not provided any record for review (ECF No. 14, Exhibit 16A,

22  page 2). The state courts were applying RAP 16.7(a)(2)(i). The RAP directs petitioner to provide

23

24

1   a statement of facts upon which he claims unlawful restraint and to provide the evidence

2   available to support the factual allegations. RAP 16.7(a)(2)(i).

3         The state courts' procedural rule must be both adequate to support the judgment and

4   independent of federal law in order to bar federal habeas review. *See Coleman v. Thompson*, 501

5   U.S. 722, 729 (1991); *Cooper v. Brown*, 510 F.3d 870, 924 (9th Cir. 2007).

6         If the state courts' rule was firmly established and regularly followed at the time of

7   petitioner's procedural default then the rule is adequate. *Fields v. Calderon*, 125 F.3d 757, 760

8   (9th Cir. 1997). If the state court's rule does not rely on federal law it is independent. *See*

9   *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *La Crosse v. Kernan*, 244 F.3d 702, 704 (9th

10  Cir. 2001).

11        Respondent has the burden of proving that the procedural rule is both adequate and

12  independent. *Scott v. Schriro*, 567 F.3d 573, 580 (9th Cir. 2009) (per curiam). With regard to the

13  adequacy of the rule respondent states:

14          The inadequate briefing rule was clearly announced long before Miles'
15  procedural default in this case. The rule requiring allegations to be based on more
    than speculation, conjecture, or inadmissible hearsay was announced, at the latest,
    in 1992, when the Washington Supreme Court issued its opinion in. *In re Rice.*
16

17          Additionally, the bar is consistently applied. The Washington courts have
    consistently applied the bar in numerous cases. *See, e.g., In re Rice*, 118 Wn.2d at
    886; *In re Dyer*, 143 Wn.2d at 397; *In re Gronquist*, 138 Wn.2d at 396; *In re*
18  *Lord*, 123 Wn.2d at 303; *In re Reise*, 146 Wn. App. at 780.

19  (ECF No.13, page 16-17).

20  Respondent addresses the independent prong of the analysis and states:

21          Application of [the state] inadequate briefing bar does not rest primarily
    on federal law; it does not require the state court to determine if federal error has
22  occurred. Rather, the court simply determines whether the petitioner has
    adequately briefed the claim. *See, e.g., In re Dyer*, 143 Wn.2d 384, 397, 20 P.3d
23  907 (2001); *In re Gronquist*, 138 Wn.2d 388, 396, 978 P.2d 1083 (1999); *In re*
    *Lord*, 123 Wn.2d 296, 303, 868 P.2d 835 (1994); *In re Rice*, 118 Wn.2d at 886; *In*

24

*re Reise*, 146 Wn. App. 772, 780, 192 P.3d 949 (2008). The state court does not consider the merits of the claim in deciding whether to apply the bar. Consequently, the state rule is based upon state law, and it is "independent."

(ECF No.13, page 17). Petitioner has not responded to the answer or filed a traverse. The Court agrees with respondent's position. Petitioner did not properly brief this ground for review in state court and the state courts refused to consider the ground for review. The Court recommends dismissal of ground four as procedurally barred.

In the alternative, the Court cannot reach the merits of petitioner's fourth ground for relief because petitioner does not provide this court with any more information than he provided the state court. The Court reviews the evidence that was before the state court. *Cullen v. Pinholster*, _ U.S. _ 131 S.Ct. 1388 (2011).

E.  No exceptions to the procedural bar apply to these claims.

Under certain circumstances a petitioner may show that cause exists to avoid the procedural bar if it resulted in prejudice to petitioner.  . "Cause" exists when the state prevents petitioner from filing a proper petition and prejudice is when petitioner could not present a claim of constitutional magnitude. In other words, to show cause, petitioner must show that some objective factor, external to the defense, prevented petitioner from complying with state procedural rules relating to the presentation of petitioner's claims. *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (*citing Murray v. Carrier*, 477 U.S. 478, 488 (1986).

"Prejudice" exists if the alleged errors were of constitutional dimensions and worked to defendant's "actual and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170 (1982).  The mere possibility of prejudice is not enough. *Id.*

Petitioner did not properly exhaust five of his grounds for relief in state court. There are no facts before the Court showing that the state prevented petitioner from properly exhausting his grounds for relief in state court.

Also, a petitioner who would be otherwise procedurally barred from bringing a federal habeas claim may be able to obtain habeas review if the petitioner can come forward with sufficient proof of actual innocence to bring him  "within 'the narrow class of cases...implicating a fundamental miscarriage of justice.'" *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995) (*quoting McCleskey v. Zant*, 499 U.S. 467, 494 (1991)).

Plaintiff has made no showing that he was actually innocent of the crimes for which he as charged and convicted.  Therefore, petitioner has failed to demonstrate that there has been a fundamental miscarriage of justice.  Therefore, the Court concludes that petitioner has no exception that would prevent procedural default.

F.  Conclusion on procedurally barred grounds for relief.

Respondent has met his burden of showing the grounds for relief are procedurally defaulted, petitioner cannot return to state court, and petitioner does not show that any exception to default applies. The Court recommends dismissal of grounds for relief two, four, seven, eight, and nine as procedurally barred.

G.  The merits of grounds for relief one, three, five, and six.

1.        Speedy sentencing.

Petitioner was found guilty on January 29, 2008 (ECF No. 14, Exhibit 1). The court set a sentencing date of February 29, 2008. At that hearing, the State requested a continuance because the state was having trouble getting prior conviction information from the Nassau County, which is in the State of New York (ECF No.14, Exhibit 3, page 4). Over defendant's objection, the

1   sentencing was held over until March 14, 2008. *Id.* This was forty-five days after the verdict was

2   entered.

3        In Washington, the right to a speedy sentencing is guaranteed by both statute and court

4   rule. *See* RCW 9.94A.500; CrR 7.1. A person must be sentenced within forty days of the verdict

5   being entered. The statute that was in place at the time petitioner was sentenced allowed for

6   extending the time period beyond forty days "for good cause shown." The trial judge was aware

7   that she was going beyond the forty day rule when she allowed the continuance. The prosecution

8   had shown good cause for the continuance because getting information from New York for one

9   of petitioner's prior convictions was proving to be difficult. Thus, the state could not provide an

10   accurate offender score.  Defense counsel acknowledged that the delay was not the fault of the

11   prosecution (ECF No. 14, Exhibit 3, page 4). The delay was only five days past the forty-day

12   time limit.

13        Cases where speedy sentencing violations have been found involve instances where the

14   delay is years, not days. *Pollard v. United States*, 352 U.S. 354, 361 (1957) (Pollard was

15   sentenced in a timely fashion, but he had left the room; two and one-half years later the error was

16   found and the court ordered re-sentencing); *Burkett v. Cunningham*, 826 F.2d 1208 (3rd Cir.

17   1987)(five and one-half year delay and a court order to re-sentence was ignored; the conviction

18   was then dismissed). Petitioner's argument that the delay was purposeful and oppressive is

19   without merit under the facts of his case.

20        The Washington State Court of Appeals reviewed this ground for relief on direct appeal

21   and held that the trial court did not abuse its discretion in granting the continuance and that the

22   short delay did not constitute a purposeful or oppressive delay. The Court applied the correct

23   legal framework and the decision is not an unreasonable application of, clearly established

24

REPORT AND RECOMMENDATION - 18

1    federal law, as determined by the Supreme Court. Nor does the Washington State Court of

2    Appeals decision result in a decision that is based on an unreasonable determination of the facts

3    in light of the evidence presented to the state courts. The Court recommends denial of this

4    ground for relief on the merits.

5            2.       Ineffective Assistance of Counsel

6            Petitioner argues that his counsel was ineffective in not investigating which prior

7    convictions the state would use at sentencing and in not objecting to the use of a class "C" felony

8    as a strike. This is ground for relief number three in the federal habeas corpus petition (ECF No.

9    6, page 21 of 50).

10           This ground for relief was addressed by the Washington State Court of Appeals (ECF No.

11   14, Exhibit 14). The Washington State Court of Appeals cites *Strickland v. Washington*, 466 U.S.

12   668, 687 (1984). In that case the Supreme Court articulated a two prong test for determining if

13   counsel was ineffective. Under the first prong the court must consider if counsel's representation

14   fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686

15   (1984). Under the second prong the court must determine if the deficient performance affected

16   the result of the proceeding.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  The

17   Washington State Court of Appeals applied the proper federal law in review of this ground for

18   relief.

19           The Washington State Court of Appeals only addressed the second prong of the test and

20   found no prejudice. Most class "C" felonies could not be used as strikes, however, the statutes in

21   effect at the time petitioner was sentenced allowed for the use of third degree rape as a "most

22   serious offense. *See*, RCW 9.94A.030(29)(n)(2008)(listing rape in the third degree as a most

23   serious offense).*See also* RCW 9.94A.030(33)(a)(i) and (ii)(2008)(defining persistent offender to

24

1  include two prior convictions that were most serious offenses). Thus, counsel was not deficient

2  in failing to object to the use of the 1984 rape conviction. Further, counsel did object to the

3  admission of the conviction for sentencing purposes (ECF No. 14, Exhibit 13, appendix "F").

4  Petitioner's argument fails on both prongs of the analysis. Counsel's performance was not

5  objectively unreasonable and petitioner shows no prejudice.

6      Petitioner also fails to show that counsel was ineffective in failing to investigate which

7  crimes would be used at sentencing. Petitioner argues that he would have accepted a plea offer

8  had he known that the third degree rape would be counted as a strike (ECF No. 6, page 21 of 50).

9  But there is nothing in the record to show that the prosecution was intending to use the rape

10 conviction as a strike before trial.  Defense counsel cannot discover facts that do not yet exist.

11     Petitioner was aware that the state was pursuing a persistent offender conviction as early

12 as December 13, 2008 (ECF No. 14, Exhibit 8, attached memo from prosecutor Oishi to defense

13 counsel DeCosta). The Washington State Court of Appeals found that during the January 17,

14 2008 hearing, defense counsel stated on the record:

15      I also would like to go on the record and say that I spoke with Mr. Miles about
        preparing a mitigation package to get to the prosecutor to avoid a potential life
16      sentence without the possibility of parole. *And he has rejected that idea. He has
        rejected it out of hand, and we have discussed it thoroughly, and he does not want*
17      *to take any kind of an offer that the State is willing to give him....*

18      So we have discussed it, and I have informed Mr. Miles for the purposes of
        deciding whether to take the deal that the State has extended to him, that this is a
19      strike offense, and he has rejected the State's offer.
        ....
20      ...We were given notice by the State that they intend to have Mr. Miles sentenced
        as a persistent offender....
21
        So we have gotten notice, and Mr. Miles has made a decision, presuming that this
22      is a third strike, and I think he is competent, and we are prepared to go to trial.

23 (ECF No. 14, Exhibit 3, page 13).

24

REPORT AND RECOMMENDATION - 20

1    Petitioner fails to show that counsel's performance was objectively unreasonable or that

2    he would have accepted a plea agreement if he had known the prior rape conviction could be

3    used against him.  Petitioner fails to show that the rulings of the state court on this ground for

4    relief resulted in a decision that was contrary to, or involved an unreasonable application of,

5    clearly established federal law, as determined by the Supreme Court; or resulted in a decision

6    that was based on an unreasonable determination of the facts in light of the evidence presented to

7    the state courts. The Court recommends denial of this ground for relief on the merits.

8        3.        Remaining grounds for relief.

9    In both remaining grounds for relief petitioner argues that the jury, and not the trial court,

10   needed to find that his prior convictions existed and that they could be used for the purpose of

11   imposing a persistent offender sentence. Petitioner's argument is directly contradicted by the

12   holdings of the United States Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 490

13   (2000) and *Blakely v. Washington*, 542 U.S. 296, 301 (2004). In *Blakely* the Supreme Court

14   stated that:

> This case requires us to apply the rule we expressed in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000): "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

18   (*Blakely*, 542 U.S. at 301; *citing*, *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). As

19   expressly determined in these cases, petitioner's prior convictions need not be presented to the

20   jury.  The Washington State Court of Appeals properly applied this United States Supreme Court

21   precedent in petitioner's case (ECF No. 14, Exhibit 14, page 1).

22   A habeas corpus petition shall not be granted with respect to any claim adjudicated on the

23   merits in the state courts unless the adjudication resulted in a decision that was contrary to, or

REPORT AND RECOMMENDATION - 21

1  involved an unreasonable application of, clearly established federal law, as determined by the

2  Supreme Court unless the state court unreasonably determines the facts in light of the evidence

3  presented. 28 U.S.C. §2254(d). There is no argument that the state court unreasonably

4  determined the facts in this case. The State Court ruling follows Supreme Court precedent.

5  Accordingly, the Court cannot grant relief through habeas corpus. The Court recommends that

6  this petition be denied.

7                        CERTIFICATE OF APPEALABILITY

8          A petitioner seeking post-conviction relief under 28 U.S.C.§ 2254 may appeal a district

9  court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

10  (COA) from a district or circuit judge.  A certificate of appealability may issue only if petitioner

11  has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. §

12  2253(c)(2).  Petitioner satisfies this standard "by demonstrating that jurists of reason could

13  disagree with the district court's resolution of his constitutional claims or that jurists could

14  conclude the issues presented are adequate to deserve encouragement to proceed further."

15  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484

16  (2000)).  Pursuant to this standard, this Court concludes that petitioner is not entitled to a

17  certificate of appealability with respect to this petition.

18          Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

19  fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

20  6.  Failure to file objections will result in a waiver of those objections for purposes of de novo

21  //

22  //

23  //

24

1  review by the district judge.  *See* 28 U.S.C. § 63(b)(1)(C). Accommodating the time limit

2  imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

3  November 9, 2012, as noted in the caption.

4      Dated this 11th day of October, 2012.

5

6

7  _____
   J. Richard Creatura
8  United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24